## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                              |   |                                          |
|------------------------------|---|------------------------------------------|
|                              | * |                                          |
| **AVA RAMEY,**               | * |                                          |
|                              | * |                                          |
|                              | * |                                          |
| Petitioner,                  | * |                                          |
|                              | * |                                          |
| v.                           | * | Criminal Case No. RWT-12-00309           |
|                              | * | Civil Action No. RWT-14-00106            |
| **UNITED STATES OF AMERICA,**| * |                                          |
|                              | * |                                          |
| Respondent.                  | * |                                          |
|                              | * |                                          |

## <u>MEMORANDUM OPINION</u>

On January 13, 2014, Petitioner Ava Ramey ("Ramey") moved under 28 U.S.C. § 2255 to vacate her sentence, claiming that her guilty plea was "unknowing and involuntary based on ineffective assistance of counsel," and made discovery requests to expand the record in furtherance of her motion.  ECF No. 34.  On March 26, 2014, the Government filed an Opposition, arguing that Ramey's claims were without merit.  ECF No. 50.  On May 5, 2014, Ramey filed a Reply that included new allegations of ineffective assistance of counsel and prosecutorial misconduct.  ECF No. 57.  Pursuant to an Order of this Court, ECF No. 61, the Government filed a Surreply.  ECF No. 64.  Because Ramey does not establish a prima facie case for relief or show good cause for discovery, her motions for discovery and to vacate pursuant to § 2255, ECF No. 34, will be denied.

## BACKGROUND

On June 5, 2012, an information was filed against Ava Ramey charging her with embezzlement of $379,000 from a labor union, in violation of 29 U.S.C. § 501(c).  ECF No. 1. On June 25, 2012, Ramey waived her right to indictment by a grand jury, instead allowing the

case to proceed by Information alone.  ECF No. 6.  The same day, Ramey pled guilty to the § 501(c) violation, and agreed to the following facts as part of her plea agreement: (1) that the union, Local 21 of the United Government Security Officers of America ("UGSOA"), was a labor organization that was engaged in commerce; (2) that Ramey acted as Assistant Trustee and later Trustee of that labor organization; (3) that the monies that are the subject of the criminal information were, at the time of the relevant conduct, the monies of the labor organization; (4) that Ramey "abused her positions of trust by *willfully and unlawfully* embezzling funds that belonged to UGSOA Local 21"; (5) that Ramey "*act[ed] with intent to defraud*"; and (6) that in all, Ramey "embezzled a total of at least $379,000 from the UGSOA Local 21 account during the period from December 2005 to October 2009." ECF No. 7-1 at 1-3 (emphasis added).  Attorney Ellis Scott Frison, Jr. ("Frison") represented Ramey in connection with the plea agreement and at the plea hearing.  ECF Nos. 4, 7 at 1.

At the plea hearing, Ramey was asked "Are the facts set forth in [the plea agreement] true and correct?" Ramey answered, under oath, "They are." ECF No. 50-1 at 30.  Then, counsel for the Government summarized the Statement of Facts to which Ramey pled guilty, stating

> Ms. Ramey abused her positions of trust by *willfully and unlawfully embezzling* funds that belonged to UGSOA Local 21.  *Acting with intent to defraud*, she embezzled funds through various means….In all, Ms. Ramey embezzled a total of at least $379,000 from UGSOA Local 21's account during the period…from December 2005 to October 2009.

*Id. at* 31-33 (emphasis added).  When asked if the summarized Statement of Facts was "true and correct," Ramey answered "Yes, Your Honor." *Id. at* 33.  When asked "Are you pleading guilty because you're, in fact, guilty?" Ramey answered, "Yes, Your Honor." *Id.*

Additionally, the Court asked Ramey, "Are you fully satisfied with the counsel, representation and advice that's been given to you in this case by your attorney [Frison]?"

Ramey answered, "Yes." *Id. at* 6.   When asked, "Do you understand your right now to indictment by the Grand Jury?" Ramey answered, "Yes, I did." *Id. at* 8.   And when asked, "Do you still wish to waive that right?" Ramey answered "Yes." *Id.*

On September 27, 2012, Frison moved to withdraw as Ramey's counsel, ECF No. 13, and on October 5, 2012, the motion was granted by Chief Magistrate Judge Connelly, ECF No. 17.   On October 10, 2012, Attorney Anthony Martin ("Martin") was appointed by Judge Connelly to represent Ramey.   ECF No. 18.   On January 4, 2013, Ramey moved to withdraw her guilty plea.   ECF No. 23.   The same day, Martin moved to withdraw as her counsel based on irreconcilable differences, ECF No. 22.   The matter was referred to Judge Connelly for an attorney inquiry hearing which was held on January 7, 2013, at the conclusion of which the motion to withdraw was denied.   ECF No. 25.

Later that day, a hearing was held on the motion to withdraw the guilty plea, at the conclusion of which the motion was orally denied.   The Court then proceeded to sentencing and Ramey was sentenced to 24 months in prison and $379,000 in restitution, ECF Nos.  24, 30.   No appeal was taken.

On January 13, 2014, Ramey filed a Motion to Vacate pursuant to 28 U.S.C. § 2255, claiming that her guilty plea was "unknowing and involuntary based on ineffective assistance of counsel failing to investigate exculpatory evidence" and for failing to challenge the restitution amount of $379,000.   ECF No. 34 at 7-9.   She also makes requests for discovery, including interrogatories and an evidentiary hearing, "to further develop the record." *Id. at* 12.   The same day, Ramey filed a Motion for Subpoena, ECF No. 33, and a Motion for Production of Transcripts, ECF No. 35.   On February 6, 2014, Ramey filed a Motion to Amend/Correct the list of proposed interrogatories submitted in connection with her Motion for Subpoena.   ECF No. 41.

On February 14, 2014 this Court denied Ramey's Motion for Subpoena, Motion for Production of Transcripts, and Motion to Amend/Correct because "[p]etitioner ha[d] not set forth sufficient factual allegations to show good cause to warrant discovery," and the "Motion fail[ed] to particularize the need for transcripts." ECF No. 44 at 2.   On March 5, 2014, Ramey filed a Notice of Appeal regarding the Order denying her Motions for Subpoena, Production of Transcripts, and to Amend/Correct the Interrogatories.   ECF No. 46.   On April 1, 2014, the United States Court of Appeals for the Fourth Circuit granted a Motion to Voluntarily Dismiss the Appeal.   ECF No. 52.   Ramey did not appeal her case on the merits.

On March 26, 2014, the Government filed an Opposition to Ramey's Motion to Vacate pursuant to § 2255, arguing Ramey's claim is without merit because (1) she testified under oath that she was fully satisfied with her representation by Frison, ECF No. 50 at 4, and (2) her claim that Frison's failure to investigate exculpatory evidence, even if true, would be irrelevant because the evidence she sought would not have provided her with a viable defense.   *Id. at* 5. The Government also argues that Ramey's claim of ineffective assistance of counsel based on failure to challenge the restitution amount is meritless because Ramey admitted under oath that she embezzled the stated amount.   *Id.* at 6.

On May 5, 2014, Ramey filed a Reply in which she repeated her allegation of ineffective assistance of counsel and alleged prosecutorial misconduct on the part of the Government. ECF No. 57.   Specifically, Ramey alleged that her counsel was ineffective for failing to (1) investigate exculpatory evidence that would show that Ramey believed in good faith that her use of the funds was authorized, (2) advise Ramey of the five-year statute of limitations on § 501(c) charges, (3) challenge the application of § 501(c) to Ramey as an independent contractor, and (4) secure a more beneficial plea agreement.   ECF No. 57 at 5-8, 13-20.   Ramey

also accused the Government of prosecutorial misconduct for misleading her and her attorney as to the elements of embezzlement under § 501(c),[1] for withholding evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and for denying the existence of a more beneficial plea agreement.  *Id. at* 5-9, 12-13.   Ramey also filed a new Motion for Discovery, Subpoena & Interrogatories to develop evidence to support these allegations.  ECF No. 57-3.

On June 19, 2014, this Court ordered the Government to file a Surreply in response to Ramey's new allegations, ECF No. 61, and on July 7, 2014, the Government filed its Surreply, ECF No. 64.  In the Surreply, the Government responded that it "did *not* tell the petitioner that a 'good faith' defense is 'not viable' as an affirmative defense….Instead, the government 'made clear to the defendant [that]…the evidence fail[ed] to support her claim' of an alleged 'good faith' defense." ECF No. 64 at 3 (emphasis in original) (internal citations to the record omitted). The Government also claimed it "has no knowledge of any of the documents" that Ramey claimed were withheld by the Government, and it "categorically rejects the idea that 'a more beneficial plea bargain … was initially offered to the petitioner.'" *Id. (*internal citations to the record omitted).

The Government also responded that the statute of limitations had not run because embezzlement is a "continuing offense," and that § 501(c) applied to Ramey whether or not she was an independent contractor because Ramey served "in 'positions of trust' with the UGSOA." ECF No. 64 at 5 (internal citations to the record omitted).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255(a), a prisoner in custody may file a motion to vacate, set aside, or correct a sentence, "claiming the right to be released upon the ground that the sentence was

---

[1] Ramey accuses the Government of misleading her and her attorney to believe that one's "good faith belief" that her personal use of funds was authorized is not an affirmative defense.  ECF No. 57 at 5-9.

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Pursuant to 28 U.S.C. § 2255(b), the Court may deny the motion without a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Zelaya v. United States*, No. DKC 05-0393, 2013 WL 4495788, at *2 (D. Md. Aug. 20, 2013).

Discovery requests in habeas proceedings are governed by Rule 6 of the Rules Governing § 2255 Proceedings.  Unlike a traditional civil litigant, a habeas petitioner "is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  A petitioner may engage in discovery only with leave of the court, after good cause is shown.  Rule Governing § 2255 Cases, Rule 6(a), 28 U.S.C. folio § 2255 (2013).  "Good cause" for discovery exists when a petitioner establishes a prima facie case for relief, *see Harris v. Nelson*, 394 U.S. 286, 290 (1969), but not where the defendant's claim fails as a matter of law, *see Thomas v. Taylor*, 170 F.3d 466, 474-75 (4th Cir. 1999).

## ANALYSIS

### I.   Ineffective Assistance of Counsel

A claim for ineffective assistance of counsel is evaluated under the two-prong test laid out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*, defendants must show (1) that counsel's performance was so "deficient" that it fell below an objective standard of reasonableness (the "performance prong"), and (2) that the defendant suffered prejudice as a result (the "prejudice prong").  *Id. at* 687-88.  "Unless a defendant makes both showings, it cannot be said that the conviction…resulted from a breakdown in the adversary process that renders the result unreliable." *Id. at* 687.  There is a "strong presumption" that counsel's

performance "falls within the wide range of reasonable professional assistance." *Id. at* 689. A claim of ineffective assistance of counsel at the plea bargaining stage requires a showing that but for counsel's deficient representation, the outcome of the plea process would have been different, *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985), i.e., that the defendant "would not have pleaded guilty and would have insisted on going to trial." *Id.*

### A. Failure to Investigate Exculpatory Evidence

Ramey argues that counsel unreasonably failed to conduct an investigation to reveal exculpatory evidence. ECF No. 34 at 7-8. This argument is without merit. Counsel was not ineffective for failing to investigate the exculpatory evidence because (1) it was reasonable not to investigate where such an investigation would likely have been fruitless, and (2) even if it were unreasonable not to investigate, this decision did not prejudice the defendant because such exculpatory evidence does not appear to exist. *Strickland* specifically explained the standards applicable to an attorney's failure to investigate certain exculpatory evidence:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether.

> *And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.*  In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Strickland*, 466 U.S. at 690-91 (emphasis added).

Ramey alleged that both of her attorneys, Frison and Martin, were ineffective for failing to investigate certain exculpatory evidence related to a "good faith belief" that her personal use of the funds was authorized by union officials.  ECF Nos. 34 at 7-9, 57 at 5-8.  However, it appears that Martin, in connection with Ramey's attempted withdrawal of her plea, conducted a reasonable investigation of the law and facts.  Specifically, Martin reviewed the record evidence, and concluded that the evidence pointed towards Ramey's guilt.  In addition, Martin specifically requested that Ramey provide him with witnesses and records that could be used in her defense.[2] ECF No. 64-1 at 25.  Ramey appears not to have done so.  This leads the Court to conclude that (1) Frison's decision, if he made one, not to investigate this defense was reasonable because it is likely that the investigation would have been fruitless, (2) Attorney Martin acknowledged this possible defense, but determined it was fruitless to pursue, and (3) even it were not reasonable for Frison to stop investigating this defense, the decision did not prejudice Ramey, as Ramey was

---

[2] In a letter from Martin to Ramey wherein Martin advises Ramey not to attempt to withdraw her guilty plea, Martin explains: "There is no written agreement, correspondence or other tangible record to introduce into evidence [that would show authorization by superior union officials].  In light of Mr. Vissor's [(the union president)] untimely death, any testimony regarding his promise would likely be held to be inadmissible hearsay." ECF No. 64-1 at 25. Further, "there will be no one from the union to corroborate your claim to back wages;…there is no specific amount as to the amount owed you;…it appears that you used the money to employ your two sons and daughter-in-law as fictitious employees….In short, the argument that you are entitled to an offset is a stretch." *Id.* At the end of Martin's letter to Ramey, Martin tells Ramey that in order to pursue this defense, "**I need your witness list immediately,** so that I can have our investigator locate them and interview them." *Id.*  (emphasis in original).  He also requests that Ramey "**immediately identify any records, books, bank accounts, student accounts or other documentation** that goes to a defense of the source of any money or property the government claims are evidence of wrongdoing.  "*Id. at* 26 (emphasis in original).  There is no record of Ramey providing either of her attorneys with any requested evidence.

apparently unable to actually produce any exculpatory evidence.  Therefore, counsel was not ineffective for not investigating exculpatory evidence.

### B.  Failure to Inform of Statute of Limitations

Ramey also argues ineffective assistance of counsel because she was never informed by counsel of the 5-year statute of limitations which applies to § 501(c) charges.  It is true that a 5-year statute of limitations applies to 501(c) embezzlement charges.  *See, e.g., United States v. Oliva*, 46 F.3d 320, 324 (3d Cir. 1995).  Ramey argues that she therefore can only be held criminally responsible for the acts she allegedly committed in the five years prior to her proffer with the government, and that the failure of Frison or Martin to inform her of this, or argue this point, constituted ineffective assistance of counsel.  ECF No. 57 at 15-16.  The Government argues, citing *United States v. Smith*, that embezzlement is a "continuing offense," so the statute of limitations did not begin to run until the final act of the offense, in October 2009.  373 F.3d. 561, 564 (4th Cir. 2004) (finding embezzlement under 18 U.S.C. § 641 to be a continuing offense).

It does not appear that the Fourth Circuit has expressly addressed whether embezzlement under § 501(c) can be a continuing offense.  However, the language of *Smith*, which describes in general the aspects of embezzlement which can make it a continuing offense, and the similarity between 18 U.S.C. § 641 and 29 U.S.C. § 501(c), strongly indicates the Fourth Circuit would find that embezzlement under 501(c) can be a continuing offense.  *Compare* 18 U.S.C. § 641 (making it a crime to "*embezzle[], steal[], purloin[], or knowingly convert[]*" property of the United States) *with* 29 U.S.C. § 501(c) (making it a crime to "*embezzle[], steal[], or unlawfully and willfully abstract[] or convert[]*" the assets of a union) (emphasis added).  This Court must adopt "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  A determination that *Smith* would have

applied to a 501(c) charge is well within this wide range.[3]   Therefore, counsel did not act unreasonably in failing to advise Ramey of the statute of limitations.

### C.  Application of § 501(c) to Independent Contractors

Ramey argues that as an independent contractor, she was not "employed" by the union, as required by the statute, and that counsel's failure to investigate this potential defense was unreasonable.   ECF No. 57 at 16-20.   However, Ramey's argument fails under *United States v. Seidman*, which expressly holds that § 501(c) does include independent contractors.  156 F.3d 542, 544 (4th Cir. 1998) ("the [language of § 501(c)] is broad enough to include independent contractors").   Therefore, counsel's decision not to raise this as a defense was reasonable.

### D.  More Beneficial Plea Agreement

Finally, Ramey argues that counsel was ineffective for failing to secure a more beneficial plea agreement.  ECF No. 57 at 13.  The crux of this argument is that Martin failed to attempt to "seek[] court intervention to compel the government to produce" an allegedly more favorable prior plea agreement.  *Id.*  As with all of her other attempts to demonstrate ineffective assistance of counsel, this argument also fails.  First, the Government "categorically rejects the idea that a more beneficial plea bargain…was initially offered to the petitioner." ECF No. 64 at 3.  Second, it appears that Martin did, in fact, attempt to negotiate a restitution amount of $150,000 based on Ramey's assertion of a prior plea agreement, but the Government rejected this attempt and asserted that no offer of $150,000 was ever made.  ECF No. 64-1 at 28.  Finally, even if a more favorable plea offer ever existed, it is difficult to understand what Martin's basis would have

---

[3] Further, the statement of facts details a number of small transactions occurring from 2005-2009, each less than $2,000, and states that the total embezzled over this period was $379,000.  ECF No. 7-1 at 3.  This appears to be exactly the fact pattern the Fourth Circuit had in mind when it pointed out that "[e]mbezzlement is the type of crime that, to avoid detection, often occurs over some time and in relatively small, but recurring, amounts."  *Smith*, 373  F.3d at 567.

been for asking the court to "compel the government to produce" the more favorable plea.  There is no constitutional right to plea bargain.  *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Since the defendant does not have a right to plea bargain, there was no basis for the Court to compel the Government to bargain on terms more favorable to Ramey.  Martin attempted to negotiate a restitution amount of $150,000 with the Government, and the Government refused, which it had every right to do.  Any request by Martin to the Court to compel the Government to grant more favorable terms to Ramey would have been frivolous.  An attorney's "failure" to make frivolous requests is not "ineffective assistance," but rather is an attorney's ethical duty.

This might be a different case if Ramey had rejected a favorable plea offer based on deficient advice of counsel, and then subsequently accepted a less favorable plea offer. *Cf. Lafler v. Cooper,* 132 S. Ct. 1376, 1385 (2012) (explaining that defendant may have an ineffective advice of counsel claim if the defendant rejects a plea offer based on deficient advice, and is subsequently convicted at trial).  However, Ramey never claims to have rejected the allegedly more favorable plea offer.  She claims the offer was "in consideration" by her when the government supposedly pulled it.  ECF No. 57 at 13.  Since she never claims that she rejected the offer on the advice of counsel, she cannot claim that she rejected the offer based on ineffective assistance of counsel.

### E.  Ramey's Plea Colloquy

In addition to the above-stated reasons for determining that Ramey was not deprived of effective assistance of counsel, Ramey herself, in open court, stated that (1) she was satisfied with representation by counsel, ECF No. 50-1 at 6, and (2) she was, in fact, guilty, ECF No. 50-1 at 33.  "Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea 'constitute a

formidable barrier' to attacking the plea. *United States v. Lambey*, 949 F.2d 133, 137 (4th Cir. 1991); *see also Fields v. Attorney General of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations [she] makes under oath during a plea colloquy.")

At the time of her guilty plea, this Court engaged in an extended Rule 11 colloquy to ensure that Ramey had effective assistance of counsel in negotiating and entering the plea agreement, that she was voluntarily entering the plea agreement, and that there was a factual basis for her guilty plea. When asked, at her Rule 11 plea hearing, if she was satisfied with her counsel, Ramey answered, under oath, "Yes." ECF No. 50-1 at 6; *see also* ECF No. 7 at 9 ("I am completely satisfied with the representation of my attorney."). At the same hearing, when asked "Are you pleading guilty because you're, in fact, guilty?" Ramey answered, "Yes, Your Honor." ECF No. 50-1 at 33. The Court further explained to Ramey the elements of the offense, and had the government summarize the statement of facts contained in Ramey's plea agreement. *Id. at* 30. In this summary, the government stated that Ramey "abused her positions of trust by willfully and unlawfully embezzling funds that belonged to UGSOA Local 21," and provided a list of transactions that were unlawful. *Id. at* 30-32. When asked whether the government's factual summary was "true and correct," Ramey stated "Yes, Your Honor." *Id. at* 32. On the basis of Ramey's sworn statements, the Court found that Ramey was "fully competent and capable of entering an informed plea, that she [was] aware of the nature of the charges and the consequences of her plea, and that her plea of guilty to the one count Information [was] a knowing and voluntary plea supported by an independent basis in the facts." *Id. at* 34. Accordingly, on the basis of her sworn statement that she was satisfied with her representation, that the statement of facts in her plea agreement was true and correct, and that she was guilty of

the crime charged, Ramey cannot now claim that she suffered from ineffective assistance of counsel, or that she was in fact innocent of the charges against her.

## II.     Prosecutorial Misconduct

Ramey argues that her sentence should be set aside because of prosecutorial misconduct. First, she claims that the Government misled her by stating that "good faith" was not a defense to a 501(c) violation, and that the government withheld exculpatory evidence.  Second, she claims that it was prosecutorial misconduct for the Government to withdraw a more favorable plea agreement and then deny its existence.

### A.  Misstatement of the Law and Brady Violation

 Ramey alleges that the government engaged in prosecutorial misconduct by misstating the law and committed a *Brady* violation by withholding exculpatory evidence.  ECF No. 57 at 9-13.   However, Ramey has not presented evidence that the Government made any misstatement of the law or that a *Brady* violation caused her sentence to be imposed in violation of the Constitution, and accordingly she is not entitled to relief.

First, the Government denies that it misled Ramey or her counsel to believe that her "good faith belief" would not be an affirmative defense.  ECF No. 64 at 3.  Rather, the government "'made clear to the defendant [that]…the evidence fail[ed] to support her claim' of an alleged 'good faith' defense." *Id.*  It also appears that Martin investigated Ramey's belief that she was not guilty because she had a "good faith belief" that she was authorized to use the funds in the manner she used them, but concluded that defense was unlikely to succeed in the face of the evidence against her.  ECF No. 64-1 at 25.

Second, *Brady* does not apply where there is no evidence that the exculpatory evidence (1) exists, (2) was ever in the possession of the prosecution or (3) was unknown to the defense. *U.S. v. Agurs*, 427 U.S. 97, 103 (1976) ("The rule of *Brady v. Maryland*…arguably applies in

three quite different situations.  Each involves the discovery, after trial of information which *had been known to the prosecution but unknown to the defense*.") (1985) (emphasis added).  The Government claims not to have any knowledge of the exculpatory evidence cited by Ramey.  ECF No. 64 at 3.  In any event, the list of purportedly exculpatory evidence cited by Ramey include documents that would have been available to her, including: Ramey's tax returns, email communications between Ramey and others, and the bylaws of UGSOA.  ECF No. 57 at 10.  None of these documents could have been "unknown to the defense," which precludes the possibility of a *Brady* violation.  *Agurs*, 427 U.S. at 103.  And, as already noted, Martin specifically asked Ramey to provide him with any exculpatory evidence that would aid in her defense.  ECF No. 64-1 at 25.  Her failure to do so at that time casts doubt on whether this exculpatory evidence even exists.  In any event, Ramey has made no showing that the exculpatory evidence was unavailable to the defense.

### B.  More Beneficial Plea Agreement

Ramey also argues prosecutorial misconduct as a result of the government's refusal to acknowledge an earlier, more favorable, plea offer.  ECF No. 57 at 12.  The substance of this argument was addressed in Section I.D, *supra*.  Again, the government denies the very existence of a prior, more beneficial plea offer.  ECF No. 64 at 3.  Suffice it to say, even if a better plea offer once existed, Ramey's sentence was not imposed in violation of the Constitution.  "[T]here is no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  Ramey cites no authority to the effect that the government is not permitted to withdraw a plea offer before it is accepted.  Accordingly, no prosecutorial misconduct could have occurred on the basis of a prior, unaccepted, plea offer.

### III.    Discovery Requests

Because Ramey has not established a prima facie case for relief under § 2255, she has not shown good cause for discovery, and her requests for discovery must be denied.

## CERTIFICATE OF APPEALABILITY

Ramey may not appeal this Court's order denying her relief under 28 U.S.C. § 2255 unless it issues a certificate of appealability.  *United States v. Hardy*, 227 Fed. App'x. 272, 273 (4th Cir. 2007).  A certificate of appealability will only issue if Ramey has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); *Hardy*, 227 Fed App'x. at 273.  A petitioner "satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable." *United States v. Riley*, 322 Fed. Appx. 296, 297 (4th Cir. 2009).

Here, the Court has assessed Ramey's complaints of ineffective assistance of counsel and prosecutorial misconduct.  Ramey has failed to raise a cognizable § 2255 claim in which a reasonable jurist could find merit, and thus no certificate of appealability shall issue.

## CONCLUSION

For the foregoing reasons, Ramey's motion will be dismissed, and no certificate of appealability shall issue.  A separate Order follows.


Date:  October 20, 2014                                    _____/s/_____
                                                            ROGER W. TITUS
                                                            UNITED STATES DISTRICT JUDGE